### JULIAN v. LAUBENBERGER.

(Supreme Court, Trial Term, Kings County. April, 1896.)

SALE—IMPLIED WARRANTY—WHOLESOME AND FIT FOR USE.

One who sells to a consumer food sealed in a can does not impliedly war-rant that it is wholesome and fit to be used, where it was known to the buyer that the seller had not prepared it, that he had not inspected it, and that he was ignorant of the contents of the can, except so far as he had purchased it from dealers in the market.

Action by Sarah H. Julian against Philip Laubenberger to recover for pain and suffering, medical attendance, and loss of business, occasioned by illness caused by eating a portion of a can of salmon purchased from defendant, which salmon was alleged to have been "rotten, putrid, unwholesome, and unfit for human consumption." The jury found for plaintiff in the sum of $131.67, and defendant moves for a new trial, on the judge's minutes. Granted.

Richard T. Greene, for the motion.
Charles F. Brandt, opposed.

STOVER, J. This action is brought to recover damages upon the following facts: On June 29, 1894, the plaintiff purchased from the defendant a can of prepared salmon. She prepared and dressed it within an hour of the time of the purchase, and, with her family, ate of the salmon. She was taken violently ill, and remained so for some time. Others who partook of the salmon were also made ill. Evidence was given upon the trial to show that the salmon sold was unwholesome and unfit to be eaten. The cause was submitted to the jury, upon an instruction that there was an implied warranty upon the part of the defendant that the salmon sold by him was wholesome and fit to be eaten. The jury found in favor of the plaintiff. A motion is made for a new trial, upon the minutes. The jury having found in favor of the plaintiff, the facts must be assumed to be as alleged by the plaintiff and found by the jury; and, unless there has been error in the instruction of the court, the motion must be denied. I shall consider but the single question, viz.: Was the instruction that, on the sale of the salmon, there was an implied warranty upon the part of the defendant that it was wholesome and fit for use as food, correct?

The plaintiff cites Van Bracklin v. Fonda, 12 Johns. 468, as an authority for the maintenance of this action, and the recovery of the special damages demanded. The authorities are not so clear that the rule may be said to have been established that, upon the sale of provisions, there is an implied warranty of their wholesomeness, as in other matters of commerce. It seems that the maxim of the civil law is caveat venditor; but, even under the civil law, a distinction was made where the seller was ignorant of the defects, and where he knew of the defects of the articles sold. And the rule is stated that, in the former case, he was liable to take back the thing or abate the price, and to indemnify the buyer as to the charges which the sale had put him to; but, in the latter,—that is, where the defects were known to the seller,—he should be bound, not only in damages according to the foregoing rule, but accountable for the consequences which the defect of the thing may have occasioned. And it is instanced that he who sold a flock of sheep which he knew would be infected with a contagious distemper, without declaring it, would be bound to make up the loss of the other sheep belonging to the buyer which had been infected with this contagious distemper. 1 Dom. Civil Law (Cushing's Ed.) p. 239.

But, as has been said, the civil law is not our law; but the com-

mon law furnished rules for our guidance in the absence of other positive provision, and the maxim of the common law is caveat emptor. Where a purchaser desires to protect himself against defects, he should obtain an express warranty. This, of course, is stated as the general rule, and, like all other rules of the common law, has its exceptions; and the law has made exceptions in cases where the enforcement of the rule would work fraud, either actually or constructively, upon the purchaser. Therefore, it is stated that in cases where the seller has sources of information and of knowledge which are inaccessible and unknown to the buyer, and the buyer purchases relying upon the merchantable quality or the marketable quality of the article purchased, the seller being chargeable with notice of the fact,—either actually or constructively with notice of the fact,—the law implies that he shall warrant or make good the quality of the article sold. But I doubt whether it can be said, in the light of the adjudicated cases, that it can be laid down as a rule, without exception, that the fact that an article was bought for a particular purpose, which purpose was disclosed to the vendor, raises a presumption that a warranty was intended, or implies, as matter of law, that the vendor has warranted the article. I think it will be seen that the exceptions in the adjudicated cases are of such a character as to question the rule as broadly stated above. But the doctrine of implied warranty, if I gather it correctly from the authorities, proceeds upon the assumption that the vendor has some means of knowledge, opportunities for inspection, or sources of information with regard to the article which are not accessible or are unknown to the purchaser. And it will be borne in mind that we are discussing implied warranties only, and, of course, no question can arise in cases where there are express warranties or in cases where a different rule has been invoked. So it will appear that, when the reason of this rule ceases,—that is, in cases where the elements which impose an obligation upon the vendor, as above stated, are lacking,—the rule itself must cease, under the well-known maxim of law. The law makes no new contract for the parties, and it does not inject, in order to protect either party, something into a contract which was not in contemplation, either actually or as matter of law, in the minds of either of the parties to the contract. But it says that what was actually in mind, or what the law could fairly imply to be considered by the parties to the contract, shall be in force. So that the maxim of caveat emptor has not been entirely waived; and I think that, even in the sale of provisions, there may be such instances that the exception, and not the rule, would be successfully invoked. It has been said that the sale of provisions forms an exception to the rule, and that the vendor must, at his peril, assume that they are wholesome and fit for use. This rule may be properly invoked in the case of an hotel keeper or a person who undertakes to prepare food, with which the consumer has no relation, except to receive and use; and it may be that under such instances the person preparing the food assumes that he has carefully performed his duties, and that he would be responsible for any act which rendered the food unwholesome and unfit for consumption.

But I doubt if, within the rules of adjudicated cases, it can be said that there is an implied warranty in the case of provisions which are sold in the market more than in other articles of food, and that such articles of provision must be judged by the same rules as other articles; and there may be circumstances in which it may be fairly presumed that the parties both relied upon the understanding and agreement that the articles sold were wholesome and fit for use, but, in a large share of the cases, it will be discovered that a scienter is alleged, and that the cases proceeded upon the theory that there had been a fraud practiced upon the purchaser in the sale of the article in question. So, in the statement in 3 Bl. Comm. 164, that there is an implied warranty, it is not entirely clear that an implied warranty was made to be stated. And in Moses v. Mead, 1 Denio, 387, the dictum that, on a direct sale of provisions for immediate consumption, the vendor may be held responsible, in some form, for the sound and wholesome condition of the articles which he sells, is not an authority for the proposition that an implied warranty is to attach to the sale; but, in connection with the reasoning of the case, it would seem to me an authority to the contrary, and the limitation "in some form" would exclude the idea that the implied warranty existed. The case of Moses v. Mead is an authority against the doctrine of implied warranty, as I read it. The direct question now under discussion was not up in that case, and hence the case is no guide here, except so far as its reasoning may commend it.

Now, what is the condition of this case in the light of the principle above stated? The defendant sells a can of food. It is well known, and must be known to both parties, that he has not prepared it, that he has not inspected it, and that he is entirely ignorant of the contents of the can, except so far as he had purchased from reputable dealers in the market. It seems to me that it would be unreasonable to say that, at the time of the purchase here, the vendee relied upon the superior knowledge of the vendor; but it must be assumed that both parties knew, and must have necessarily known, that the vendor was entirely ignorant of, and without means of ascertaining, the condition of the article sold, and that the means of inspection were as much open to the purchaser as the vendor. Under such circumstances, if the purchaser desires to protect himself, he must have recourse to an expressed warranty. The law cannot be so unreasonable as to inject into a contract what neither party had, or could have had, in mind at the time the contract was made. Now, as has been stated above, the reason for the rule entirely ceases in a case like the one under consideration. In the progress of affairs, the manner of preparing and selling food has come to that condition that everybody purchasing ought to be presumed to know that the retail merchant, who sells to the consumer food sealed in cans, and with which he has no connection other than as conduit between packer and the consumer, has no superior means of knowing the contents of the can than the purchaser has, and in that event, if the purchaser desires to protect himself, he may ask for an investigation at the time of purchasing, or he may get an express warranty as to the qualify of the goods, and, if he fails to do this,

the maxim of caveat emptor must apply. If, knowing this, he purchases canned goods, opens them, and uses them without inspection, and without special means of knowing whether the contents are wholesome or not, he is not protected by an implied warranty on the part of the vendor.

I have discussed this case now to a greater length than I had intended, and I have discussed simply the question of implied warranty. Questions of actual fraud, deceit in sales, or where there is a sale of provisions with knowledge of the condition, are not important to discuss in this case; they proceed upon an entirely different rule than the one which is in question.

Perhaps I ought to discuss somewhat the question raised as to the illegality of the sale, it being an offense at common law to sell unwholesome food; but the rule is too broadly stated in the case at bar to raise a liability by reason of the sale prohibited by the common law. The scienter is an essential ingredient of the sale of unwholesome provisions at common law, and it may be stated without question that the sale of unwholesome provisions for immediate use as food, knowing that they were of an unwholesome quality, and without imparting that knowledge to the purchaser, would create both a liability at common law and a civil liability for the damages following. But in the case under discussion the scienter is entirely lacking. There is no allegation of the scienter, and none attempted to be proved, so it goes on an implied warranty as to the quality of the food. And, if I am correct in the conclusions above stated, there is no implied warranty upon the sale under the circumstances in this case.

It follows that the instruction to the jury was erroneous; that consequential damages cannot be recovered; and a new trial should be granted.