## S. H. KRESS & CO. v. FERGUSON et al.
### No. 2338.

Court of Civil Appeals of Texas. Beaumont.
May 24, 1933.

Rehearing Denied May 31, 1933.

Terrell, Davis, McMillan & Hall, of San Antonio, for appellant.

Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellees.

O'QUINN, Justice.

This is an action by appellee Zell Ferguson, joined by her husband, D. B. Ferguson, against S. H. Kress & Co., for damages alleged to have resulted from the sale to her of impure and unwholesome ice cream. She alleged that appellant is a Texas corporation, and on August 4, 1928, was operating a department store on Houston street in the business district of San Antonio, Tex., and in connection therewith operated a lunch counter and a·soda fountain, where it prepared and sold food and drinks to the public for specified prices set out upon menu cards furnished patrons. That about the noon hour on said date she entered said store, seated herself at the lunch counter, and ordered certain food and an ice cream soda, which was prepared and sold to her for immediate consumption. That she ate said ice cream soda, and that the ice cream contained poisonous and deleterious ingredients which were unwholesome and unfit for consumption as food, and as a result she was poisoned and made severely sick and sustained severe and permanent injuries.

She further alleged that appellant negligently caused and permitted said ice cream soda to contain poisonous and deleterious ingredients, and in the preparation of said ice cream soda negligently placed therein ice cream and other ingredients which were poison and unfit for human consumption; that appellant negligently failed to ascertain and see that the ice cream put into the ice cream soda was pure and wholesome and fit for human consumption; and that appellant negligently put into said ice cream soda ice cream and ingredients which were poison and injurious and unfit for food.

She further alleged that appellant impliedly warranted that the ice cream soda and ice cream and the ingredients contained therein were wholesome and fit for consumption as food. Severe and permanent injuries were alleged to have been suffered by said Zell Ferguson, fully and minutely pleading same, by reason of which she was damaged in the sum of $25,000, for which she prayed judgment.

Appellant answered by general demurrer, general denial, and specially denied that it was negligent in the particulars alleged by appellees and that if the ice cream did contain any harmful or deleterious ingredients that appellant was not in any way guilty of negligence, in that it did not manufacture the ice cream but purchased it from Keller's Creamery, which was a recognized and approved creamery of the highest standard in the city of San Antonio. Appellant further alleged in detail the manner in which the ice cream was manufactured and delivered to it; that said ice cream was not handled, mixed, or manipulated in any way by the appellant; and that the ice cream was served by the appellant from the original package in which it was delivered to the appellant and was not in any way changed.

Appellant further answered that the premises upon which the ice cream was served were maintained in the most sanitary and wholesome manner, in that both Keller's factory and the lunch counter of the appellant were subject to supervision by the health department of the city of San Antonio, and were regularly inspected and approved.

Appellant further answered that it used reasonable and ordinary care in the purchase of said ice cream from a responsible manufacturer; that it used reasonable and ordinary care in keeping said ice cream from the time it was delivered to it until it was served to appellee; that if said ice cream contained any harmful or deleterious substance the same could not be detected by appellant by sight, smell, or taste, and that it used reasonable and ordinary care in serving same to the appellee.

Appellant further answering denied the serious nature of the injuries claimed to have been suffered by appellee, and expressly

denied that appellee had suffered any injuries of a permanent nature.

At the close of the plaintiffs' evidence, and when the evidence as a whole was closed, appellant moved for an instructed verdict in its favor, which motions were refused. The case was then tried to a jury upon special issues, in answer to which the jury found (a) that appellant prepared and sold to appellee Zell Ferguson, for immediate consumption as food, an ice cream soda containing ice cream which contained harmful and deleterious ingredients which were injurious to health; (b) that such sale constituted negligence; (c) that such negligence directly caused the injuries to appellee Zell Ferguson alleged by her in her petition; (d) that in purchasing the ice cream soda from appellant, appellee Zell Ferguson relied entirely upon the skill and judgment of appellant to select, prepare, and furnish to her sound and wholesome food; (e) that appellant did not use reasonable care in keeping said ice cream from the time it was delivered to it by Keller's Creamery to the time it was served to her, Zell Ferguson; (f) that appellant did not use reasonable and ordinary care in serving said ice cream to appellee Zell Ferguson; and (g) that appellee Zell Ferguson had suffered damages in the sum of $11,000. Upon these findings, judgment was rendered in favor of appellees for $11,000. Motion for a new trial was overruled, and appellant brings this appeal.

Appellant presents and urges many assignments of error against the judgment as reasons why said judgment should be reversed and rendered in its behalf, and, if not rendered, then reversed and remanded, but we shall discuss only one—the sixth. It reads:

"Sixth Proposition

"A restaurant keeper maintaining a clean and sanitary establishment, regularly inspected and approved by the municipal authorities, which purchases ice cream from a reputable manufacturer, whose plant is regularly inspected and approved by the municipal sanitary authorities, and serves said ice cream from the original container in which it comes, without any change in the same, does not impliedly warrant that same is wholesome and fit for consumption as food and contains no deleterious or injurious substance."

There is no conflict in the evidence necessary to a decision. We find in the record, this agreement:

"It is agreed by all parties to the above styled cause that the following facts are true and correct: 'The defendant, S. H. Kress & Company, is, and was upon August 4th, 1928, a corporation duly incorporated, and upon said date said defendant owned and operated a department store on Houston Street, in the business district of San Antonio, Texas; that in said store said defendant maintained and operated a lunch counter and soda fountain where it sold as dealer, food and drinks to the public, at specified prices, set out upon menu cards, each article of food and drink being listed on the menu cards as separate articles at separate and stated prices.

"'On August 4th, 1928, at about twelve o'clock noon, the plaintiff, Zell Ferguson, entered said store of S. H. Kress & Company located on Houston Street, and seated herself at the lunch counter and soda fountain and ordered from the menu card furnished by defendant a vanilla ice cream soda; that the defendant, and its agents, then and there prepared and sold to the plaintiff, for immediate consumption, a vanilla ice cream soda, which she purchased from the defendant, S. H. Kress & Company, and paid therefor to the defendant the sum of money which was listed as the price of said ice cream soda upon said menu. Among the ingredients which were put in said ice cream soda in preparation thereof by defendant were vanilla syrup, flavoring, carbonated water and vanilla ice cream. The ice cream put into said ice cream soda contained deleterious and harmful ingredients, injurious as an article of food; that by reason of consuming said ice cream in said ice cream soda the plaintiff, Zell Ferguson, was very shortly thereafter made sick.' "

■■ We think that the assignment of error, supra, should be overruled and the judgment affirmed for the reason, as we hold, appellant impliedly warranted that the food sold appellee Zell Ferguson was wholesome, contained no deleterious substance, and was fit for consumption. We are aware that on this question the decisions of the courts of the various states are conflicting, but we think that the great weight of modern authority, and the better reasoning, supports our holding. Many, if not most, of the older cases which hold to the contrary, went off on the idea that there had not been a sale of food, but of service in serving the food. The cavil over the question of whether the serving of food amounted to a sale can have no application to the facts of the instant case, for in the agreed facts set out above, it is admitted that appellant, as a retail dealer, prepared and sold to appellee for immediate consumption the vanilla ice cream soda by her ordered and paid for, and that same was by her then and there consumed. The admission further shows and states that appellant, in preparing said ice cream soda, put into same ice cream that contained deleterious and harmful ingredients, injurious as an article of food, and that by reason of consuming same appellee was made sick. Even under the old decisions, a sale by appellant having been conceded, the implied warranty of the wholesomeness of the food sold and its fitness for the use for which it was bought, follows. As supporting our holding of im-

plied warranty, we cite: Friend v. Childs Dining Hall Co., 231 Mass. 65, 120 N. E. 407, 408, 5 A. L. R. 1100; Barringer v. Ocean S. S. Co., 240 Mass. 405, 134 N. E. 265, 266; Heise v. Gillette, 83 Ind. App. 551, 149 N. E. 182, 183; Smith v. Carlos (Mo. App.) 247 S. W. 468; Fantroy v. Schirmer (Mo. App.) 296 S. W. 235, 237; Greenwood v. John R. Thompson Co., 213 Ill. App. 371; Craft v. Parker, 96 Mich. 245, 55 N. W. 812, 813, 21 L. R. A. 139; Zielinski v. Potter, 195 Mich. 90, 161 N. W. 851, L. R. A. 1917D, 822; Temple v. Keeler, 238 N. Y. 344, 144 N. E. 635, 35 A. L. R. 920; Heinemann v. Barfield, 136 Ark. 500, 207 S. W. 62; Sloan v. F. W. Woolworth Co., 193 Ill. App. 620; Parks v. Yost Pie Co., 93 Kan. 334, 144 P. 202, L. R. A. 1915C, 179; Race v. Krum (ice cream case), 222 N. Y. 410, 118 N. E. 853, L. R. A. 1918F, 1172; Burkhardt v. Armour & Co., 115 Conn. 249, 161 A. 385, 389; Flessher v. Carstens Packing Co., 93 Wash. 48, 160 P. 14; Walters v. United Grocery Co., 51 Utah, 565, 172 P. 473, L. R. A. 1918E, 519; Doyle v. Fuerst & Kraemer, 129 La. 838, 56 So. 906, 40 L. R. A. (N. S.) 480, Ann. Cas. 1913B, 1110; 55 C. J. 764–766; 26 C. J., Food, § 91–B, p. 783; 15 A. & E. Ency. Law (2d Ed.) 1238.

In 55 C. J. 764, it is said: "It is the general rule that where the sale is for immediate consumption there is an implied warranty that the food is wholesome and fit for the purpose."

At page 766, it further says:. "There is also held to arise an implied warranty of fitness for human consumption in cases of food served to a guest in an eating house."

26 C. J., at page 783, says: "On implied warranty. But as a general rule in all sales of food or beverages for immediate consumption, by a dealer or ordinary trader, there is an implied warranty of fitness and wholesomeness for consumption, and such dealer or trader is liable for injury resulting from the fact that such food or beverages are not fit and wholesome."

15 A. & E. Ency. Law (2d Ed.) in announcing the rule says: "In all sales of food provisions by a retail dealer for immediate domestic use there is an implied warranty of fitness and wholesomeness for consumption."

In the case of Friend v. Childs Dining Hall Company, supra, and which we believe expresses the great weight of modern authority upon the decisive question here involved, the Supreme Court of Massachusetts said:

"* * * It is ancient law, that when one resorts to a tavern, inn, or eating place, there for a consideration to be served with food for immediate consumption, and is received as a guest by the keeper, a duty is implied that the food shall be fit to eat. It has been said that 'if a man goes into a tavern for refreshment and corrupt drink or meat is there sold to him, which ' occasions his sickness, an action clearly lies against the tavern keeper; * * * an action lies against him without express warranty for it is a warranty in law.' * * *

"The relation between guest and host in a public house is one of contract. It seemingly is the result of those early authorities that it was an implied term or condition of that contract that the food and drink furnished should not be harmful, but appropriate for eating. * * * Food for immediate use which is not fit to eat is not merchantable as food. This rule was held in Farrell v. Manhattan Market Co., 198 Mass. 271, 15 L. R. A. (N. S.) 884, 126 Am. St. Rep. 436, 84 N. E. 481, 15 Ann. Cas. 1076 [21 Am. Neg. Rep. 142], to be applicable to cases where a purchaser buys from a dealer food at retail for immediate use. That rule now prevails generally in this country. * * *

"The authorities already cited appear to show that by the common law of England it was an implied term of the contract that the guest should be furnished wholesome food by the proprietor of a public eating house to which he resorted for refreshment.

"* * * The exhaustive review of cases in the Farrell opinion demonstrated that it was the law, both of England and of this commonwealth, that in the absence of statute it was an implied term of every sale of provisions by a dealer for immediate use, where the selection was not made by the buyer, that the food was fit for consumption. The principles there discussed and the result there reached appear to be equally applicable to the case at bar. It would be an incongruity in the law amounting at least to an inconsistency to hold with reference to many keepers of restaurants who conduct the business both of supplying food to guests and of putting up lunches to be carried elsewhere and not eaten on the premises, that, in case of want of wholesomeness, there is liability to the purchaser of a lunch to be carried away founded on an implied condition of the contract, but that liability to the guest who eats a lunch at a table on the premises rests solely on negligence. The guest of a keeper of an eating house or innkeeper is quite as helpless to protect himself against deleterious food or drink as is the purchaser of a fowl of a provision dealer. The opportunity for the innkeeper or restaurant keeper, who prepares and serves food to his guest, to discover and provide against deleterious food is at least as ample as is that of the retail dealer in foodstuffs. The evil consequences in the one case are of 'the same general character as in the other. Both concern the health and physical comfort and safety of human beings. On principle and on authority it seems to us that the liability of the proprietor of an eating house to his guest for serving bad food rests on an implied term of the contract and does not sound exclusively in tort, although of,

course he may be held for negligence if that is proved. Without repeating the reasoning of Farrell v. Manhattan Market Co. [supra], 198 Mass. 271, 15 L. R. A. (N. S.) 884, 126 Am. St. Rep. 436, 84 N. E. 481, 15 Ann. Cas. 1076 [21 Am. Neg. Rep. 142], we are of the opinion that, on sound legal principles, it bears with equal force upon the facts here presented. Even if there were no common-law authority (which there is, as already pointed out), it would not be practicable to establish a distinction upon this point which could be supported in reason, between the liability of a retail dealer in meat for immediate consumption and of a victualer who serves food to guests to be eaten forwith at his own table. Every argument which supports liability of the former tends to sustain liability of the latter with at least equal cogency. They appear to us to rest upon the same footing in principle."

In Barringer v. Ocean S. S. Co., supra, the Supreme Court of Massachusetts reiterated its ruling in the Friend-Childs Case, saying: "It was decided in Friend v. Childs Dining Hall Co., 231 Mass. 65, 120 N. E. 407, 5 A. L. R. 1100, that, when food is furnished by a restaurant keeper in response to the order of a guest, there is an implied contract by the restaurant keeper that the food is fit to eat. * * *

"This principle is applicable to the case at bar. The defendant contracted to furnish the plaintiff with proper food, and if the defendant failed in this duty it was responsible to the plaintiff in damages."

In Heise v. Gillette, supra, it appeared that Heise operated a restaurant and confectionery, and that he served to Gillette a chicken sandwich containing impure ingredients which made Gillette sick. The Indiana court said:

" * * * It is appellant's contention that appellee, in order to recover, was bound to allege and prove negligence on the part of appellant, and he contends that she did neither, while appellee contends that the question of appellant's negligence is not involved, and relies upon an implied warranty which she says arises from the facts alleged and proven.

"Appellant says that one serving food to be immediately consumed on the premises is neither an insurer of the fitness and wholesomeness of the food so served, nor liable upon an implied warranty; that there is no sale of the food served or furnished; and that the law of sales relating to implied warranties does not apply, citing authorities to sustain his contention. But we are not favorably impressed with appellant's contention, nor with the force of the authorities cited. Certainly they can have no application to modern conditions and methods of service, where as here, the guest orders and pays for at a stipulated price, and has delivered to her, such food as she desires. We see no reason why such a transaction does not constitute a sale, and why it is not accompanied by an implied warranty that the food sold is wholesome to eat, containing no deleterious substance. This seems to be in harmony with the great weight of modern authority. The general rule is thus stated in 35 Cyc. 407: " 'It is the general rule that where the sale is for immediate consumption, there is an implied warranty that the food is wholesome and fit for the purpose, irrespective of the seller's knowledge of defects therein.' "

In Smith v. Carlos, supra, the plaintiff recovered damages for injuries caused by eating fish served at a restaurant. The appellant there contended that recovery could be based only upon negligence and insisted there was no implied warranty. In affirming the judgment, the Missouri court said:

" * * * The appellant's main contention is that the only recovery against a defendant engaged in running a restaurant, such as in this case, must be based on negligence, and that he is not liable on breach of implied warranty. No Missouri cases are found on this question. Other courts are divided on the proposition. The two principal cases (collating the authorities) relied on by appellant and supporting his position are Valeri v. Pullman Co. (D. C.) 218 F. 519, and a dissenting opinion in Friend v. Childs Dining Hall Co., 231 Mass. 65, 120 N. E. 407, 5 A. L. R. 1100; on the other hand, the majority opinion in the latter case, and the case of Race v. Krum, 222 N. Y. 410, 118 N. E. 853, L. R. A. 1918F, 1172, and Barrington v. Hotel Astor, 184 App. Div. 317, 171 N. Y. S. 840, hold that there is an implied warranty of pureness of food furnished by a restaurant keeper, and subject him to liability for special damages that may result from furnishing impure food. We think that the element of a sale of food enters into the transaction where one goes into a restaurant, makes an order from a menu card upon which are marked different prices for different dishes. The fish in this case was ordered and delivered for immediate use, and the same reason that would hold the grocer, or the butcher, or the manufacturer, indeed, who never sees the ultimate customer, on the theory of an implied warranty should also apply with equal force and reason to the restaurant keeper who hands out a fish produced, prepared, and served by him to one of his guests.

"The trend of the times is to require eating houses to be as sanitary as possible, and to protect the public as far as can be by inspections, tests, etc. The importance of pure food to the public, and the inability of a guest to see or examine his food prior to its preparation and cooking, of necessity requires that one who holds himself out as a public furnisher of food and an expert in producing and preparing the same be held as an insurer.

against injury occasioned by a failure to furnish wholesome and pure food to eat."

In Fantroy v. Schirmer, supra, the Missouri court reiterated the right to recover upon an implied warranty, saying: "The rule appears to be well established that accompanying all sales by a retail dealer of articles of food for immediate use there is an implied warranty that the same is fit for human consumption."

In Greenwood v. Thompson, supra, the rule was thus stated: " * * * It has been held repeatedly in this State that a retail dealer in foodstuffs, selling the same for domestic use and consumption, impliedly warrants that such foodstuffs are sound and wholesome and fit to be eaten, and he is liable in damages if they prove to be otherwise, whether he was aware of their condition or not. * * * In our opinion, this must be held to be the rule of law applying to restaurant keepers. Any other rule, as applied to modern restaurants, would be inconsistent with the decisions of our Supreme Court involving the liability of retail dealers. * * * The patron of the restaurant keeper who consumes his food on the premises is quite as helpless to protect himself against deleterious food as is the customer who takes the food he buys away from the premises and consumes it elsewhere."

The Supreme Court of Michigan, in Craft v. Parker, supra, tersely states the rule thus: "A dealer who sells food for consumption impliedly warrants that it is fit for the purpose for which it is sold."

The Court of Appeals of New York (the highest court in the state), in passing upon the question here involved, in Temple v. Keeler, supra, said: "We hold that, where a customer enters a restaurant, receives, eats, and pays for food, delivered to him on his order, the transaction is the purchase of goods. We hold also that under such circumstances the buyer does by implication make known to the vendor the particular purpose for which the article is required, and, where the buyer may assume that the vendor has had an opportunity to examine the article sold, it appears conclusively that he relies upon the latter's skill or judgment. Rinaldi v. Mohican Co., 225 N. Y. 70, 121 N. E. 471. Consequently there is an implied warranty that the food is reasonably fit for consumption."

In Burkhardt v. Armour, supra, the Supreme Court of Connecticut said:

"There is practical unanimity of modern authority, that both under common law and the Sales Act, upon the sale of food to be immediately put to domestic uses, there is, as between dealer and the buyer-consumer, an implied warranty of wholesomeness and fitness to be eaten, including freedom from foreign substances which may be injurious to the consumer." (Citing many authorities.)

Race v. Krum, supra, was a case where a druggist sold ice cream to be consumed upon the premises. The ice cream there, as here, contained deleterious and harmful ingredients, injurious as an article of food, and when eaten by the buyer injured the buyer, and the dealer there, as here, was held liable in damages for such injuries, and the action there, as here, was based upon an implied warranty of wholesomeness.

We do not deem it necessary to further quote from the decisions cited supra. Many other cases holding in line with them could be cited. While we have not been able to find a case determined in Texas, wherein the facts related to the sale by a retail dealer of food for immediate human consumption, and which was not fit for human consumption, resulting in injury to the consumer, still we believe that our courts have, in principle, resolved the question as we here hold. It is well settled that the general rule that where an article is sold for a special use, there is an implied warranty that it is suitable for such intended purpose. Davis v. Ferguson Seed Farms (Tex. Civ. App.) 255 S. W. 655; Turner v. Shackelford (Tex. Com. App.) 288 S. W. 815, 816. The rule as applied to sale by a retail dealer to consumer for immediate consumption is stated and approved by the San Antonio Court of Civil Appeals, speaking through Judge Fly, in Houk v. Berg, 105 S. W. 1176, 1177. This was a case where a retail dealer sold sacked stock feed to a customer to be fed to his stock. The result was the death of one horse and the sickness of one mule, for which damages were sought. In affirming a recovery by the plaintiff, Judge Fly said:

" * * * The pleading is very uncertain and indefinite, but it appears to be an effort to declare on the implied warranty incident to the sale of the bran, as well as on an express warranty of its soundness, and no exceptions were urged against the petition in the court below. We think, under such circumstances, proof of an implied warranty was sufficient to make out a case.

" * * * It is the rule that, where a dealer or ordinary trader sells goods for immediate consumption by the buyer, an implied warranty arises that the goods are wholesome and fit for food. * * *"

So far as we are able to discover, the holding in Houk v. Berg has not been overruled or criticized. We think it very clearly indicates the law in this state as to an implied warranty in case of the sale by a retail dealer to a purchaser of foodstuffs for immediate consumption. In the language of counsel for appellee, "certainly if there is an implied warranty that food sold for animals is fit for consumption, there is far more reason for holding that food sold to human beings is fit for human consumption. It would be a travesty to announce that a man could recover damages for his horse upon an im-

plied warranty that the food was pure, and then to hold that the same rule would not apply for the protection of a human being. Unquestionably the courts of Texas will uphold the great weight of modern authority which sustains the rule that there is an implied warranty that food sold for immediate consumption is free . from deleterious and harmful ingredients." We add, that a just regard for the preservation of human life and the promotion of human health impels the rule that when one engages to retail to purchasers food for immediate consumption that he shall, at least impliedly, warrant that the article sold by him is wholesome and fit for human consumption. To gainsay this salutary rule would be to deny, in a large measure, the most effective protection of the public against careless and unscrupulous dealers.

Appellant's assignment that the damage award of $11,000 is excessive is overruled. The evidence of the injuries suffered, and the serious nature and lasting effects thereof, amply sustains the judgment.

The judgment should be affirmed, and it is so ordered.

Affirmed.